IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| CYNTHIA W.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 5:18-cv-00102 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| ANDREW M. SAUL,[2] | ) | By:  Joel C. Hoppe |
| Commissioner of Social Security, | ) |        United States Magistrate Judge |
|     Defendant. | ) | |

    Plaintiff Cynthia M. asks this Court to review the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 7. Having considered the administrative record, the parties' arguments, and the applicable law, I find that substantial evidence supports the Commissioner's denial of benefits. Accordingly, the decision will be affirmed.

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Andrew M. Saul became Commissioner of Social Security in June 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See*

*Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In August 2014, Cynthia filed for DIB alleging she had been unable to work since February 28 of that year because of depression, anxiety, atrial fibrillation, and chronic obstructive pulmonary disease. *See* Administrative Record ("R.") 66, 225–28, ECF No. 11-1. Cynthia was fifty-seven years old, or a "person of advanced age" under the regulations, on her alleged onset date. R. 66; 20 C.F.R. § 404.1563(e). Disability Determination Services ("DDS"), the state agency, denied her claim initially in February 2015, R. 66–76, and upon reconsideration that October, R. 77–85. On March 9, 2017, Cynthia appeared with counsel and testified at an administrative hearing before ALJ Donald Neely. *See* R. 37–65. A vocational expert ("VE") also testified at this hearing. R. 59–64.

ALJ Neely issued an unfavorable decision on June 2, 2017. R. 10–22. He first found that while Cynthia worked consistently from 1989 through 2013, her "income dropped significantly" when she retired in February 2014 and she had not performed substantial gainful activity since that time. R. 12 (noting that this change "corroborat[ed] her alleged onset of impairment in February 2014, when she retired"). At step two, ALJ Neely found Cynthia had "the following severe impairments: Chronic obstructive pulmonary disease ('COPD'); Atrial fibrillation and tachycardia; and Obesity." *Id.* Her anxiety and depression were nonsevere medical impairments

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

because they caused at most "mild" limitations in her overall capacities for understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. R. 13–14. Cynthia's severe impairments did not meet or medically equal the relevant Listings. R. 15–16 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 3.02, 4.05).

ALJ Neely then evaluated Cynthia's residual functional capacity ("RFC") and found that she could perform "sedentary work" insofar as she could sit for six hours and stand/walk for only two hours during a normal eight-hour workday.[4] She could also "lift 20 pounds occasionally [and] 10 pounds frequently" and tolerate "occasional exposure" to extreme temperatures and respiratory irritants. R. 16. ALJ Neely did not impose any restrictions on Cynthia's ability to perform work-related mental functions. *See id.* Based on his RFC finding and the VE's testimony, ALJ Neely concluded at step four that Cynthia was not disabled after February 2014 because she could return to her past relevant work as a customer-service representative or insurance-claims clerk as those "semi-skilled" and "skilled" jobs were actually or generally performed. R. 21–22; *see* R. 60–62; 20 C.F.R. § 404.1568(b), (c). ALJ Neely did not reach an alternative conclusion about whether Cynthia could transition other work that offered a significant number of jobs in the national economy given her RFC, age, education, and work history. *See* R. 21–22, 60–62. The Appeals Council declined to review the ALJ's decision, R. 1–3, and this appeal followed.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a), and typically requires sitting for about six hours and standing and/or walking for about two hours throughout a normal eight-hour workday, *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 768 (W.D. Va. 2002); *see also* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations," but they are not presumed disabled. SSR 96-9p, 1996 WL 374185, at *3.

III. Discussion

Cynthia's arguments challenge different aspects of ALJ Neely's RFC determination. *See generally* Pl.'s Br. 4–11 (mental limitations), 11–18 (medical opinions), 18–20 (credibility), ECF No. 13. A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite all her medical impairments and symptoms.[5] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016).

The ALJ has broad discretion to decide whether an alleged symptom or limitation is supported by or consistent with other relevant evidence, including objective evidence of the underlying medical impairment, in a claimant's record. *See Hines*, 453 F.3d at 564 n.3; *Perry v. Colvin*, No. 2:15cv1145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). Generally, a reviewing court will affirm the ALJ's RFC findings when he considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and his decision built an "accurate and logical bridge from that evidence to his conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). *See Thomas v. Berryhill*, 916 F.3d 307,

---

[5] "Symptoms" are the claimant's own description of her medical impairment. 20 C.F.R. § 404.1502(i).

311–12 (4th Cir. 2019).

A.   *Mental Limitations*

Cynthia first argues that ALJ Neely's written decision was internally inconsistent because at step two he found that Cynthia's anxiety and depression were "nonsevere" medical impairments that caused no more than "mild" overall limitations in the four broad areas of mental functioning, but his subsequent RFC finding did not put any limitations on Cynthia's work-related mental functions. *See* Pl.'s Br. 4–11 (citing R. 13–14, 16).

ALJs must follow a "special technique" whenever a claimant alleges disability based on a mental impairment. *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520a). First, the ALJ determines whether the claimant produced sufficient evidence to establish the existence of a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1); *see id.* § 404.1521. Second, assuming the claimant clears the first step, the ALJ must "rate the severity of [the] mental impairment(s)," 96-8p, 1996 WL 374184, at *4, by determining the degree to which it interferes with the claimant's overall "ability to function independently, appropriately, effectively, and on a sustained basis" in four areas of mental functioning: (a) understanding, remembering, and applying information; (b) interacting with others; (c) concentrating, persisting, and maintaining pace; and (d) adapting and managing oneself, 20 C.F.R. § 404.1520a(c)(2)–(3).[6] The ratings should be based on all the relevant evidence in the record, including clinical signs on mental-status exams, the nature and efficacy of

---

[6] ALJs use a five-point scale to document these ratings: "None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* § 404.1520a(c)(4); *accord* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2)(a)–(e) (defining a similar five-point rating scale used at step three as: none or no limitation; mild or "slight" limitation; moderate limitation or "fair" functioning; marked or "serious" limitation; and extreme limitation or "not able to function in [the] area independently, appropriately, effectively, and on a sustained basis").

6

any treatment, and the claimant's symptoms or other statements describing how her mental impairment impacts her overall functioning in these areas. *See id.* § 404.1520a(c)(2). Next, the ALJ determines at steps two and three whether "the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659. If the ALJ rates the claimant's "degrees of . . . limitation as 'none' or 'mild,'" then he usually will also conclude that the impairment is "not severe" because it does not cause "more than a minimal limitation in [her] ability to do basic work activities," 20 C.F.R. § 404.1520a(d)(1), like remembering "simple instructions," exercising judgment, and dealing with changes in a routine work setting, *id.* § 404.1522(b). *See also* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E), (H).

Finally, even when a mental impairment is properly found to be nonsevere, the ALJ must consider the extent to which the impairment and any related symptoms impact the claimant's ability to perform more specific work-related functions (e.g., following directions, exercising judgment, responding appropriately to other people, handling stress) under ordinary workplace conditions. *See Alla Z. v. Berryhill*, No. 5:17cv61, 2018 WL 4704060, at *3–4 (W.D. Va. Sept. 30, 2018) (citing 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2–3, *5); SSR 85-16, 1985 WL 56855, at *1 (Jan. 1, 1985). "This RFC assessment is a holistic and fact-specific evaluation," *Patterson*, 846 F.3d at 659, that must reasonably account for any work-related functional limitations the ALJ identified when rating the impairment's severity, *Mascio*, 780 F.3d at 638 (step three); *Ashcraft v. Colvin*, No. 3:13cv417, 2015 WL 9304561, at *8–10 (W.D.N.C. Dec. 21, 2015) (step two). *See also* SSR 96-8p, 1996 WL 374184, at *4. Alternatively, the ALJ may explain why an overall limitation in any of the broad functional areas "does not translate into a [specific] limitation" on the claimant's capacity to do work-related mental activities. *Mascio*, 780 F.3d at 638.

7

ALJ Neely's decision satisfies this deferential standard of review. First, consistent with the regulation's special technique, he found that Cynthia's "medically determinable mental impairments of anxiety and depression," R. 13, caused "mild limitation" in each functional area, R. 14. He based these ratings on relevant evidence in Cynthia's record, most notably the normal findings on her mental-status exams, *see* R. 333–43, 422–23, 575–76, 618, 625–26; her report in June 2014 that her "depression [was] doing well," R. 331; her decision in November 2016 not to change her Cymbalta, despite also reporting that she was "struggling with a little bit of seasonal depression," R. 616–17; and her testimony in March 2017 that Cymbalta and Wellbutrin gave her "some" symptom relief and she had not received any counseling or other mental-health treatment beyond the medication her primary-care provider prescribed, R. 53. *See* R. 14. He also pointed out material gaps in the evidence, such as that the DDS psychologist who reviewed Cynthia's records in February 2015 "did not find that [her] mental impairments were severe,"[7] the hearing-level medical record contained "no diagnosis of general anxiety and no treatment for it," and Cynthia "did not testify to any issues getting along with others" or identify any mental limitations in her daily activities. *Id.*

Next, ALJ Neely explained at step two that Cynthia's depression and anxiety were "nonsevere" medical impairments because they caused "no more than 'mild' limitation in any of

---

[7] ALJ Neely later noted that the reviewer, Daniel Malone, Ph.D., found Cynthia's "mental impairments [were] non-severe." R. 20 (citing R. 66–75). In fact, Dr. Malone opined that Cynthia produced "insufficient evidence to establish a medically determinable mental impairment" because her medical record did not document any abnormal clinical findings made by an acceptable medical source and there was "no information" about whether or how her depression and anxiety symptoms impacted her daily functioning. R. 70 ("[T]here is only information that mood and memory are 'intact'"); *see* R. 333–35, 339–40. Even assuming Cynthia had a medically determinable mental impairment, however, Dr. Malone also explained there was "no basis to establish whether the mental impairment(s) [was] severe." *Id.* Cynthia's testimony filled in some of the gaps that Dr. Malone had found lacking, and ALJ Neely cited that testimony in explaining why Cynthia's depression and anxiety caused "mild" limitations in each broad functional area. R. 14.

the functional areas." R. 14 (citing 20 C.F.R. § 404.1520a(d)(1)). An ALJ may consider a medical impairment(s) to be "not severe" when he logically explains why "it is a *slight abnormality* which has such a *minimal effect* on the individual," *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that it does not meaningfully disrupt her ability to do basic work activities, SSR 96-3p, 1996 WL 374181, at *2. *See, e.g.*, *Alla Z.*, 2018 WL 4704060, at *3–4 (substantial evidence supported conclusion that claimant's anxiety and depression were nonsevere where ALJ cited limited abnormalities on mental-status exams and lack of mental-health treatment beyond medications prescribed by a general practitioner); *Stevens v. Colvin*, No. 6:14cv21, 2015 WL 5510928, at *9–10 (W.D. Va. Sept. 16, 2015) (substantial evidence supported conclusion that claimant's depression was nonsevere where ALJ cited limited abnormalities on mental-status exams, lack of mental-health treatment beyond common prescription medications, and claimant's reports that symptoms improved with medication); *cf. Coffey v. Colvin*, No. 1:09cv830, 2013 WL 6410383, at *4 (M.D.N.C. Dec. 9, 2013) (noting that "[a]lthough courts generally consider an impairment . . . severe so long as it is not obviously slight, insignificant, or meaningless," the claimant "must support any showing with relevant medical evidence").

Cynthia does not directly challenge ALJ Neely's findings or conclusions at step two. *See generally* Pl.'s Br. 4–10. Instead, she argues the RFC finding is fatally flawed because it does not include any restrictions on her work-related mental activities. Put differently, because ALJ Neely found that Cynthia's nonsevere anxiety and depression caused "mild" overall limitations, and "mild" means something more than "none" or no limitation, she maintains that ALJ Neely necessarily erred by "failing to spell out" how those mild deficits translated into restrictions on her ability to sustain mental work activities on a regular and continuing basis. *See id.* at 4–6, 11.

9

*Contra Miller v. Colvin*, No. 2:13cv31251, 2015 WL 917772, at *16 (S.D. W. Va. Mar. 3, 2015) (rejecting as "fundamentally flawed" the claimant's argument "that if the ALJ found [the] mental impairments to be severe at step two of the process, he automatically was bound to include functional limitations in the RFC finding to account for those impairments"). Cynthia does not identify any specific restrictions ALJ Neely should have included in the RFC finding. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming denial of benefits where plaintiff did "not identify any functional limitations that should have been included in the RFC [finding] or discuss any evidence that would support the inclusion of any limitations"). Rather, she asserts that "even a minimal impairment in the ability to interact socially" or accurately perform tasks "would almost certainly affect a person's ability" to work as an insurance-claims clerk or customer-service representative, Pl.'s Br. 9, both of which at step four ALJ Neely found Cynthia retained the RFC to perform, R. 21–22. *See* Pl.'s Br. 8–10 (citing Claims Clerk, DOT No. 241.362-010, 1991 WL 672250; Policyholder-Information Clerk, DOT No. 249.262-010, 1991 WL 672314).

ALJ Neely adequately explained why Cynthia's depression and anxiety caused "mild" limitations in her mental functioning overall, but did not actually impair her capacities to sustain more specific work-related mental functions under ordinary workplace conditions. SSR 96-8p, 1996 WL 374184, at *3–4, *6; *see Blevins v. Colvin*, No. 5:15cv14240, 2016 WL 6987169, at *14–16 (S.D. W. Va. Sept. 16, 2016) (citing *Strempel v. Astrue*, 299 F. App'x 434, 439 (5th Cir. 2008)). To start, he did not "ignore" those impairments after finding them to be nonsevere at step two. *See* Pl.'s Br. 5–6 & nn. 4–6. He discussed the evidence relevant to Cynthia's mental work-related limitations, including her testimony and statements to healthcare providers, the normal findings on mental-status exams, her limited and conservative mental-health treatment, and the

10

available medical opinions. *See* R. 17–21 (citing R. 48–53, 333–43, 422, 575, 593–95, 618, 625). ALJ Neely rejected Cynthia's testimony that "she was making mistakes" and "cognitive decline [was] impeding her ability to do her last job" as a Special Investigation Analyst, R. 17, because nothing in her limited mental-health record "suggest[ed] she was doing poorly at work or was missing days due to her impairments," R. 18. *See also* R. 14, 20. On the contrary, Cynthia's "mental status examinations . . . [were] all within normal limits," she reported medication helped her depression symptoms, and she received "no treatment" for an anxiety disorder. R. 14 (citing R. 53, 331, 616–17); *see* R. 17–20 (citing R. 333–43, 422–23, 575–76, 618, 625–26). Exam notes showed Cynthia's mood and memory were normal, R. 333–35, 339–40, and providers consistently described her as "pleasant," R. 341, 516, 618, 625, 629, 631, 633, 635, 638, or "delightful," R. 342, 565. There is no indication Cynthia made too many mistakes in her customer-service and claims-representative jobs before she was promoted to the even more demanding analyst position around 2008. *See* R. 42–48, 307–08. ALJ Neely also pointed out that, although Cynthia testified those particular jobs were very stressful because she was often on the receiving end of "not nice calls," *see* R. 22 (citing R. 45, 48, 50, 52–53), she "did not testify to any issues getting along with others" and she could "go to the store and visit friends without issue" from a psychological standpoint, R. 14. Cynthia does not challenge these findings. *See Perry*, 2016 WL 1183155, at *7.

Read as a whole, ALJ Neely's RFC analysis shows he conducted "a more detailed assessment by itemizing various functions contained in the [four] broad categories," R. 14, and reasonably concluded Cynthia's overall mild limitations in those areas did not translate into any specific, credibly established restrictions on her capacities to communicate and interact with customers, exercise judgment, or persist in and complete somewhat complex or detailed tasks on

11

a full-time basis, R. 13–15, 16–18, 20, 21–22. *See Perry*, 2016 WL 1183155, at *5–7; *Blevins*, 2016 WL 6987169, at *14–16. Accordingly, I find no error in this aspect of his RFC finding.

*B.     Medical Opinions*

Next, Cynthia challenges how ALJ Neely considered the "Treating Source Statement-Physical Conditions" questionnaire that Anne Weiss, FNP-C, and Thomas Murphy, M.D., completed for Cynthia in January 2017. *See* Pl.'s Br. 11–18 (citing R. 20–21, 582–85). Cynthia established care with Nurse Weiss and Dr. Murphy at Winchester Pulmonary and Internal Medicine in June 2013. *See* R. 341–43. Her atrial fibrillation, gout, depression/anxiety, and hypertension were all "treated and controlled" at that time. R. 343. Cynthia also reported "moderate COPD/asthma," but she did not "feel[] like she need[ed]" to use inhalers and she declined any other treatment. R. 341, 343. Her psychical exam was normal except for "slightly diminished" lung sounds and "slightly prolonged" expiration. *See* R. 342–43.

Cynthia continued under these providers' care for the rest of the relevant period. *See* R. 331–40, 348–49, 562–66, 582, 605, 616–19, 625–40. In June 2016, she reported a new medication was "controlling her [heart] rate without any breakthrough symptoms." R. 625. Her breathing was "somewhat labored with the recent high heat and humidity," and she still smoked about half a pack of cigarettes a day. *Id.* Relevant findings on physical exam were normal except for "prolonged" lung sounds. R. 626. That November, Cynthia reported that her "breathing ha[d] been stable" and she had not suffered any "recent exacerbations." R. 616. She walked normally and had full muscle strength in all four extremities. R. 618. In January 2017, Dr. Murphy and Nurse Weiss opined that Cynthia could "rarely" lift and carry ten or fewer pounds; sit, stand, and walk for at most one hour each during an eight-hour day; "rarely" to "occasionally" reach, climb stairs, stoop, crouch, and balance; and "never" drive a car. *See* R. 582–85. Cynthia would also

miss more than four days of work each month because of her impairments or treatment. To the best of their knowledge, the "symptoms and limitations in this questionnaire first appear[ed]" on June 7, 2013, the same date Cynthia established care at their clinic. R. 582; *see* R. 341–43. Asked to explain or "[i]dentify the particular medical or clinical findings" that supported these limitations, they wrote Cynthia had "retired as of 2/2014" and referred the reader to unspecified "medical records" that had already been submitted with Cynthia's claim. R. 583–85. The providers attributed Cynthia's lifting/reaching limitations to COPD, but they did not explain those restrictions. R. 583.

Cynthia asserts that ALJ Neely did not give "good/specific/supported reasons for rejecting" the medical opinions found in Dr. Murphy's and Nurse Weiss's questionnaire. Pl.'s Br. 14. Medical opinions are statements from "acceptable medical sources," including physicians, that reflect the source's judgments about the nature and severity of the claimant's impairment, including her symptoms, diagnosis, functional limitations, and remaining abilities. 20 C.F.R. § 404.1527(a)(1). The ALJ must adequately explain the weight afforded to each medical opinion in the record, taking into account relevant factors like the nature and extent of the provider's treatment relationship with the claimant; how well he or she explained or supported the opinion; the opinion's consistency with the record as a whole; and whether the opinion pertains to the provider's medical specialty. *See id.* § 404.1527(c). The regulation also "promises that the ALJ 'will always give good reasons in [the] decision for the weight'" assigned to a "'treating source's medical opinion,'" *Brown*, 873 F.3d at 256 (quoting 20 C.F.R. § 404.1527(c)(2)), because treating sources are "likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the claimant's impairments, 20 C.F.R. § 416.1527(c)(2). A reviewing court "must defer to the ALJ's assignment of weight" among

differing medical opinions unless his underlying findings or rationale "are not supported by substantial evidence" in the record. *Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. 2015); *see also Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016).

ALJ Neely's explanation why he accorded "little weight" to Dr. Murphy's and Nurse Weiss's statements when evaluating Cynthia's RFC, R. 20–21, satisfies this "deferential standard of review," *Dunn*, 607 F. App'x at 271. First, ALJ Neely found Nurse Weiss and Dr. Murphy "treated [Cynthia] as primary care practitioners regularly since 2013," R. 20, so there is no reason to believe he considered their opinions under the wrong legal standard, *see Winick v. Colvin*, 674 F. App'x 816, 820 (10th Cir. 2017), or ignored evidence about the nature or extent of the providers' treatment relationship with Cynthia. *See* Pl.'s Br. 14–15. Moreover, Fourth Circuit precedent does not require ALJs in all cases to specifically "mention" or "discuss," *id.*, each regulatory factor in his written decision. *See, e.g.*, *Bishop v. Colvin*, No. 583 F. App'x 65, 67 (4th Cir. 2014) ("While the ALJ did not explicitly analyze each of the [regulatory] factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons" to discount or reject a treating-source opinion). It requires ALJs to reasonably explain why the treating physician's medical opinion merited less-than controlling weight. *See Sharp*, 660 F. App'x at 256–57 (citing *Monroe v. Colvin*, 826 F.3d 176, 190–91 (4th Cir. 2016)).

Second, ALJ Neely "did not summarily conclude that [the] opinion merited little weight." *Id.* at 257. He explained that Nurse Weiss and Dr. Murphy provided no explanation supporting the "specific medical limitations" Cynthia had and did "not indicate what symptoms" would cause such "extensive[]" restrictions on her capacities to lift, sit, stand, and walk. R. 20 (citing R. 583). ALJ Neely also cited Dr. Murphy's and Nurse Weiss's "repeated references to [Cynthia]

14

being retired, suggesting that the specific limitations noted reflect" her level of physical activity "as a retiree, rather than how much" she could do if she returned to the workforce. R. 20–21. These are "specific and legitimate reasons," *Bishop*, 583 F. App'x at 57, to discount a treating physician's medical opinion. *See Laporte v. Comm'r of Soc. Sec.*, No. 1:15cv456, 2016 WL 5349072, at *7 (W.D. Mich. Sept. 26, 2016) (ALJ properly discounted treating physician's "cryptic" and unexplained medical opinion); 20 C.F.R. § 404.1527(c)(3)–(4), (6).

Cynthia challenges the ALJ's finding that her providers' opinion was unsupported, noting that Nurse Weiss and Dr. Murphy "referred to COPD as the chronic condition" that limited her physical capacities. Pl.'s Br. 16; *see* R. 583. "[M]edical conditions alone do not entitle a claimant to disability benefits; '[t]here must be a showing of related functional loss.'" *Felton-Miller*, 459 F. App'x at 229–30 (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Cynthia's COPD "diagnosis, without more, does not establish that she suffers from any particular symptoms or limitations." *Id.* Thus, the providers' failure to identify any of Cynthia's COPD symptoms (e.g., dyspnea on exertion) that could explain their extreme restrictions on her exertional capacities was a legitimate reason for ALJ Neely to discount those restrictions. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th Cir. 2016) (ALJ "gave good reasons" for discounting treating physician's assessment of claimant's physical abilities, including that the physician "simply noted" the claimant's COPD and other diagnoses when asked to cite supporting medical evidence); 20 C.F.R. § 404.1527(c)(3).

Cynthia also objects that ALJ Neely failed to "identify any inconsistency" between the providers' opinions and their "complete record of treatment" notes found elsewhere in the record. Pl.'s Br. 16 (citing R. 328–63, 417–47, 562–71, 605–41). In fact, ALJ Neely cited several examples throughout the relevant period where Cynthia's physical examinations were generally

within normal limits—including full strength throughout, no difficulty walking, and normal cardiac function—except for diminished lung sounds and prolonged expiration. *See* R. 18–19 (citing R. 331, 562–63, 616–19, 625–28). He then explained that those medical findings, along with Cynthia's daily activities and the fact that she continued to smoke, supported a conclusion that she could lift at least ten pounds, sit for six hours, and stand/walk for two hours in an eight-hour workday. *See* R. 19–20. He also credited Cynthia's treating cardiologist's February 2017 medical opinion that she could occasionally lift/carry ten pounds and stand/walk for about two hours in an eight-hour workday. R. 20 (citing R. 592–95). ALJ Neely acted within his discretion to reject Dr. Murphy's and Nurse Weiss's more restrictive opinions "in the face of [such] persuasive contrary evidence." *Anderson v. Comm'r of Soc. Sec.*, 127 F. App'x 96, 97 (4th Cir. 2005) (quoting *Mastro*, 270 F.3d at 170).

C. *Cynthia's Symptoms*

Lastly, Cynthia asserts that ALJ Neely did not "acknowledge or discuss [her] consistent work history" before concluding that Cynthia's statements describing her allegedly disabling medical conditions were not entirely credible. *See* Pl.'s Br. 19–20. The regulations set out a two-step process for ALJs to evaluate symptoms as part of the RFC assessment. *See Lewis*, 858 F.3d at 865–66. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce," *id.* at 866, the actual pain or other symptoms "in the amount and degree[] alleged by the claimant," *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit [her] ability," *Lewis*, 858 F.3d at 866, to work on a regular and continuing basis, *Mascio*, 780 F.3d at 637. "The second determination requires the ALJ to assess the credibility of the claimant's statements about

16

symptoms and their functional effects" after considering all the relevant evidence in the record. *Lewis*, 858 F.3d at 866; *see Mascio*, 780 F.3d at 639; *Hines*, 453 F.3d at 565. A reviewing court will uphold the ALJ's credibility determination if his articulated rationale is legally adequate and supported by substantial evidence in the record. *See Bishop*, 583 F. App'x at 68 (citing *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Cynthia alleged she was disabled after February 2014 primarily because her COPD and heart problems severely limited her exertional capacities. *See* R. 41, 49, 55–56. In March 2017, she estimated that she could sit for most of the day, lift about fifteen pounds, and stand for five minutes at a time, up to two or three hours throughout the day. *See* R. 44–45, 50, 56. She used an automatic shopping cart when she went to the grocery store because she had "trouble walking any distance." R. 55. Cynthia lived alone and could do some cooking and housework throughout the day, but her adult daughters helped with vacuuming or cleaning. *See* R. 55–56. She had problems breathing every day and felt tired all the time even though she wore a CPAP machine as prescribed. *See* R. 51, 55, 56–57.

ALJ Neely found that Cynthia's statements describing the severity of her symptoms were inconsistent with other relevant evidence in the record, including that she had normal gait and full strength on physical examinations, the fact that she continued to smoke against medical advice, and her "partially limited" ability to engage in daily activities like driving, taking care of her personal needs, cleaning, cooking, and visiting friends. R. 19. These were legitimate reasons for ALJ Neely to conclude Cynthia's symptoms are not as debilitating as she alleged, *see* 20 C.F.R. § 404.1529(c)(3), and Cynthia "generally agrees with those reasons" in her case, Pl.'s Br. 18. Nonetheless, she maintains ALJ Neely's credibility analysis is flawed because "the Agency's rules require consideration of a claimant's historical willingness to work," *id.* at 20; *see Locker v.*

17

*Berryhill*, No. 2:17cv342, 2018 WL 4232889, at *7 (E.D. Va. July 6, 2018) (citing 20 C.F.R. § 404.1529(c)(3)), *adopted by 2018* WL 4224852 (E.D. Va. Sept. 5, 2018), and ALJ Neely purportedly "failed to even acknowledge [Cynthia's] strong work history," Pl.'s Br. 18. In fact, ALJ Neely noted at the outset that Cynthia's earnings records showed "consistent work" from 1989 through 2013. R. 12. He also found as part of the RFC assessment that Cynthia spent twenty-seven years working for the same company and had reached "full-retirement status" when she left her analyst job in early 2014. R. 17. There is no indication that he misinterpreted this evidence. "[W]here, as here, the ALJ provides legitimate reasons to question the severity of a person's report of symptoms, a good work history will not overcome those reasons." *Weaver v. Colvin*, No. 3:15cv26, 2016 WL 4768841, at *9 (W.D. Va. Sept. 13, 2016) (citing *Wheeler v. Colvin*, Civ. Action No. 1:13-445, 2014 WL 2157458, at *14 (D.S.C. May 23, 2014)).

## IV. Conclusion

Cynthia does not identify any reversible error in ALJ Neely's RFC analysis or "point to any specific piece of evidence not considered by the [ALJ] that might have changed the outcome of [her] disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (emphasis omitted). Instead, she urges the Court to weigh the same evidence that ALJ Neely examined and to conclude that he should have found Cynthia disabled. The Court's role is "to determine whether the ALJ's decision is supported as a matter of fact and law." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). "There were a number of conflicts in the evidence here," and the Court will "not second guess the ALJ in resolving those conflicts." *Id.* ALJ Neely's written decision is clear enough to show that he "performed an adequate review of the whole record and the decision is supported by substantial evidence." *Id.*

Accordingly, the Court will **GRANT** the Commissioner's motion for summary judgment, ECF No. 14, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket. A separate order will enter.

The Clerk shall send certified copies of this Memorandum Opinion to the parties.

ENTER: April 30, 2020

*[signature]*

Joel C. Hoppe
United States Magistrate Judge